UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLIN JUAN PIERSON, | No. 2:23-cv-00884-DJC-EFB (HC) |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| L.A. MARTINEZ, Warden, | |
| Respondent. | |

Petitioner is a state prisoner without counsel seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner was convicted in Shasta County Superior Court of residential burglary; he was sentenced under the "Three Strikes" law to a sentence of 25 years to life. *Id.* Petitioner now alleges that the prosecutor committed misconduct and that his counsel was ineffective. *Id.* He has also filed a motion for default judgment. ECF No. 13. For the reasons that follow, the petition for writ of habeas corpus and the motion for default judgment must both be denied.

////

////

////

////

////

////

# I. BACKGROUND

The relevant facts, as relayed by the California Court of Appeal[1], are:

Maria R. testified that, on the morning of the burglary, she propped her garage door open with a bucket as she left to take her son to school. The door leading into her apartment from the garage was closed but unlocked. When she returned, she saw a white SUV-type vehicle in the parking lot. She saw a person wearing "something like a ski mask," going through the passenger floor or glove compartment area. She did not pay too much attention; it was cold that morning and she thought it was a new tenant. As she opened her garage door, she heard the front door "being ruffled with." She thought it was her husband, Anthony R., who was actually asleep. When Anthony woke up, they realized someone else must have been in the house. Maria noticed her Apple watch was missing and her couch had been "messed with." She called the police and she and Anthony began tracking her watch through her iPhone.

During this process, Anthony and Maria met with Officer Ryan Ellis at a convenience store. While Anthony went home, Maria and Officer Ellis tracked the watch to a nearby Walmart, where Maria noticed the same white SUV-type vehicle she had seen in her parking lot that morning. Defendant and codefendant Mike Leyva were walking away from the vehicle. Officer Ellis detained defendant and Leyva and found an Apple watch in Leyva's back pocket.

Maria recognized defendant as a person who used to visit the apartment next to hers. Anthony also testified he knew defendant "a little bit" because his former neighbor is a relative of defendant and Anthony had seen defendant "maybe a handful" of times.

Defendant denied knowledge of a burglary but admitted he was at the apartment complex and wearing a ski mask earlier that day.

Codefendant Leyva testified that defendant asked him to commit the burglary. Defendant told Leyva that the R.'s were making "ghost guns", guns without serial numbers, in the apartment and he wanted to get them. Leyva said he and defendant spoke about this weeks prior and, on the morning of the incident, defendant drew a map of the layout of the apartment and outfitted them both with a mask and bulletproof vest. Defendant told Leyva that the residents leave the garage door open, and Leyva planned to enter and exit through the open garage.

Leyva admitted that he entered the residence and when he noticed Maria returning, he took an Apple watch and charger, left through the front door, then drove with defendant to defendant's house. At defendant's house, they took off the vests and masks, then went to Walmart to buy a phone card. Defendant asked whether he "got anything" and Leyva answered in the negative; Leyva was not sure whether he told defendant about the watch.

Leyva testified that he was subsequently charged in this matter and entered an open plea of guilty; he had not been sentenced at the time of his testimony against defendant. He admitted that he hoped to receive a favorable recommendation from the prosecution regarding his sentence but stated he was testifying because of his

---

[1] The facts recited by the state appellate court are presumed to be correct where, as here, the petitioner has not rebutted the facts with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Slovik v. Yates*, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (as amended).

own desire to tell the truth. Leyva also told the jury that he agreed to commit the burglary because defendant was "a little intimidating" and explained defendant was roughing up a girlfriend, with whom Leyva was friends.

The prosecution charged defendant with first degree burglary, with the allegation that another person, other than an accomplice, was present during the commission of the offense. (Pen. Code, §§ 459, 462.) (footnote omitted). The prosecution also alleged that defendant suffered two prior serious felonies for purposes of the Three Strikes law and sentence enhancements. (§§ 1170.12, 667, subd. (a).) The jury found defendant guilty of first degree burglary and found true the allegation that a person was present during the commission of the office. In a separate hearing, the trial court found true the prior strike allegations. The trial court denied defendant's *Romero* motion and sentenced defendant to 25 years to life under the Three Strikes law.

*People v. Pierson*, 2022 WL 610594, *1-2 (Cal. Ct. App. March 2, 2022); ECF No. 14-9 at 2-4.

## II.    STANDARDS OF REVIEW

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S.34 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly

3

established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 47-49 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." *Id*. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law under § 2254(d)(1) if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412; *accord Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

4

decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision meets the criteria set forth in § 2254(d), a reviewing court must then conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) *(en banc)* ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

In evaluating whether the petition satisfies § 2254(d), a federal court looks to the last reasoned state court decision. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, the court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 99-100 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 293 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine

5

whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 99-100.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

### III.  ANALYSIS

#### A. Prosecutorial Misconduct

Petitioner maintains that Leyva's testimony against him was the result of prosecutorial misconduct.  Specifically, petitioner maintains that the prosecutor used "deceptive and reprehensive methods to influence" Leyva to testify. ECF No. 1 at 5.  In its written denial of petitioner's state habeas petition, the Superior Court addressed this claim as follows[3]:

> This petition seeks relief alleging two grounds.  First, it alleges prosecutorial misconduct, and second, ineffective assistance of counsel.  The second is dependent on the first.
>
> Petitioner's grounds center around the use of a witness and testimony by his co-defendant, Michael Leyva.  After Leyva plead to the burglary, he, through his attorney, contacted the Deputy District Attorney, Toby Powell, to offer himself as a witness for the prosecution.  In addition to pending the residential burglary sentencing, Leyva was pending misdemeanor charges.  Attached to the petition is a transcript of a recorded discussion between Leyva and Powell which, though in-artful, identifies the 'agreement' that Leyva tell the truth and the DA can argue for a more favorable sentence in the case and act favorably in the misdemeanor case.
>
> Leyva did testify.  In essence Leyva admitted he entered the residence at the

---

[3] Neither issue raised in this federal habeas petition was addressed by the state appellate court in a reasoned opinion.  Rather, when petitioner appealed the Superior Court's denial of his prosecutorial misconduct and ineffective assistance of counsel claims, the state appellate court denied the appeal in a one-line postcard denial.  ECF No. 14-16 at 87.  Thus, while petitioner properly exhausted these claims (and respondent so acknowledges (ECF No. 12)), the last reasoned opinion is that of the Superior Court.

petitioner's direction to steal within the residence while petitioner waited outside in a van. Petitioner wore a ski mask while he waited. Leyva ran from the house after stealing a watch when the female victim arrived at the residence. The male victim had been inside sleeping the entire time. Later, after tracking the stolen watch by the use of a tracking application on the watch, Leyva and the petitioner were arrested.

. . .

Petitioner's contention is that Powell's actions in both obtaining Leyva's agreement to testify and during his examination of Leyva were "deceptive and reprehensive" and amount to egregious misconduct. The petitioner points to the following as the alleged egregious acts:

1. Shared the Police report with Leyva to refresh memory. (During Leyva's testimony.)

2. Met with Leyva and spoke with him about his testimony prior to trial. . . .

3. The DDA recommending a more lenient sentence in the pending burglary and some favorable resolution of a pending misdemeanor.

4. Giving Leyva immunity for his testimony in the misdemeanor case.

5. The DDA's express desire to focus more on, and being more interested in, the prosecution of petitioner based on petitioner's prior serious criminal history.

It is important to note that all of the above were known to petitioner before trial or were actually happening in front of petitioner during the trial. It is also true that none of the above-mentioned conduct on the part of the prosecutor is out of line. For example, it is perfectly acceptable under the evidence code to refresh a witness's memory by the use of written material, including a police report. It is also perfectly reasonable to meet with and discuss testimony with a witness before trial, particularly where, as here, that conversation is recorded and provided to the defense.

In short, none of the specific actions petitioner describes is misconduct. What petitioner then asserts is that, because all of these things happened, there must have been a secret meeting between DDA Powell and Leyva in which improper tactics were employed to persuade Leyva to do something. That 'something' is actually not stated with specificity. The 'leap of logic' the petitioner asks this court to engage in is this: Based upon petitioner's interpretation of the actual, known, and legal acts of the prosecutor, the court should assume that a secret action was taken that amounts to prejudicial prosecutorial misconduct.

ECF No. 14-13 at 1-2.

A criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. *Darden v. Wainwright,* 477 U.S. 168, 181 (1986). However, such misconduct doe not, per se, violate a petitioner's constitutional rights. *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993) (citations omitted). Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's

7

[actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Johnson v. Sublett,* 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted); *see also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Turner v. Calderon*, 281 F.3d 851 868 (9th Cir. 2002). Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice. *Johnson*, 63 F.3d at 930 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Put another way, prosecutorial misconduct violates due process only when it has a substantial and injurious effect or influence in determining the jury's verdict. *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). Finally, it is the petitioner's burden to state facts that point to a real possibility of constitutional error in this regard. *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).

Here, petitioner has failed to demonstrate that the decision of the state court regarding alleged prosecutorial misconduct was contrary to or an unreasonable application of, clearly established Supreme Court precedent, or that it was based on an unreasonable determination of the facts of this case. To begin with, petitioner cannot rebut the state court's reasonable conclusion that "none of the specific actions petitioner describes is misconduct." ECF No. 14-13 at 2. Petitioner has not identified any controlling case law establishing that, for example, it is misconduct for a prosecutor to refresh a witness' recollection with a document or to meet with a witness, even if that witness is an accomplice. As such, petitioner cannot demonstrate that anything in the state court decision contravened clearly established federal law. *See Carey*, 549 U.S. at 77. Petitioner does speculate that the prosecution used "deceptive and reprehensive methods to influence a witness to testify against petitioner at trial in violation of due process" (ECF No. 1 at 5), but he does not provide any support for his position. He conclusorily alleges that the prosecutor coerced Leyva to fabricate his testimony against petitioner, but his primary support of this allegation is a potentially leading question the prosecutor asked in open court while questioning Leyva. ECF No. 1-1 at 10-12. On this record, the state court's rejection of petitioner's claim of prosecutorial misconduct was reasonable.

////

### B. *Ineffective Assistance of Counsel*

Petitioner also maintains that his counsel failed to object to the alleged prosecutorial misconduct and failed to expose the alleged misconduct to the jury. ECF No. 1 at 8. In its written denial of petitioner's state habeas petition, the Superior Court addressed this claim as follows:

> The allegation here is simple. Petitioner contends that his attorney was incompetent for failure to either stop the testimony of Leyva based upon the above described 'egregious' conduct of the prosecutor or to otherwise ferret the conduct out and expose that evidence to the jury.
> . . .
>
> When presented with a petition for a writ of habeas corpus, a court must first determine whether the petition states a prima facie case for relief; that is, whether it states facts that, if true, entitle the petitioner to relief, and also whether the stated claims are for any reasons procedurally barred." (*People v. Romero* (1994) 8 Cal. 4th 728, 737.) Vague or conclusory allegations are insufficient to state a prima facie case. "We are entitled to and we do require of a convicted defendant that he allege with particularity the facts upon which he would have a final judgment overturned." (*In re Swain* (1949) 34 Cal. 2d 300, 304). The petition should "state fully and with particularity the facts on which relief is sought." *People v. Duvall* (1995) 9 Cal. 4th 464, 474). Finally, "conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing. (*People v. Karis* (1988) 46 Cal. 3d 612, 656).
>
> In his Petition, petitioner does state facts. He even attaches material, such as transcripts and other writings, which confirm those facts. Those factual assertions come from material provided to the defense before petitioner's trial as well as testimony taken at the trial; Leyva's testimony. However, these are not the facts upon which petitioner seeks relief. If that were so, he should have brought the matter on appeal. It is, rather, what petitioner concludes from the stated facts and attachments that fails. Petitioner concludes that from the stated facts, and those contained in his attachments, that some secret and undisclosed meetings and agreements were made between the prosecutor Powell and the witness Leyva that were designed to make the case against petitioner stronger. This conclusion is petitioner's, but it is not fact. This court sees no facts sufficient to conclude anything other than the known contacts and tactics between Powell and Leyva ever actually occurred. Even if something did it is even further speculative that misconduct occurred. The petition on the first ground shall be denied.
>
> It follows that because the first ground falls for lack of factual support that it was not ineffective assistance of counsel to have failed to prevent it or expose it in evidence before the jury. Likewise, the petition fails to make a prima facie case on ground two.

ECF No. 14-13 at 3.

////

///

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland*, 466 U.S. at 687-88. To support a claim of ineffectiveness of counsel, a petitioner must first show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id.* After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id. See also Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . . . that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689.). There is also a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689).

Petitioner cannot demonstrate that the state court's decision rejecting petitioner's claim of ineffective assistance of counsel was an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts of this case. As the state court properly concluded, petitioner's claim for ineffective assistance is based on his claim of

prosecutorial misconduct, in that petitioner alleges that his attorney was incompetent for failing to either stop Leyva's testimony, or to expose the alleged misconduct to the jury. ECF No. 1.

Petitioner's ineffective assistance claim, premised as it is on the notion that the prosecutor engaged in misconduct, necessarily fails. As discussed *supra*, the prosecutor did not, as petitioner suggests, commit misconduct. Rather, the record reflects that petitioner's trial counsel could reasonably have determined that nothing in the prosecutor's conduct warranted an objection. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (holding that failure to take a futile or meritless action is not deficient performant); *see also Lowry v. Lewis*, 21 F.3d 344, 346 (1994) (finding that effective assistance does not require a lawyer "to file a motion which he knows to be meritless on the facts and the law."). Given that petitioner cannot demonstrate incompetency on the part of his counsel, he also cannot demonstrate prejudice, and his claim must be denied. *See Strickland*, 466 U.S. at 687-88.

### C. Motion for Default Judgment

Petitioner has also brought a motion for default judgment, alleging that respondent did not timely file an answer to his petition. ECF No. 13. This court ordered respondent to file an answer within 60 days of June 21, 2023. ECF No. 7. Respondent filed an answer on July 28, 2023, well within the court-ordered deadline.[4] ECF No. 12. Accordingly, petitioner's motion for default judgment must be denied.

### IV. RECOMMENDATION

For the reasons stated above, it is hereby RECOMMENDED that both the petition for writ of habeas corpus and the motion for default judgment (ECF No. 13) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

---

[4] Respondent's answer was served by mail on petitioner, according to the proof of service. ECF No. 12 at 12.

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing § 2255 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: May 29, 2024

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE